# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**FOSTER GAY WILLIAMS, III,**

    Petitioner,

v.                                                           **Civil Action No. 2:13-CV-87**
                                                                  **Criminal Action No. 2:11-CR-12**
                                                                    **(BAILEY)**

**UNITED STATES OF AMERICA,**

    Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge John Kaull. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Kaull for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Kaull filed his R&R on July 1, 2014 [Crim. Doc. 67, Civ. Doc. 8]. In that filing, the magistrate judge recommended that this Court deny and dismiss this motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. As set forth below, this Court agrees with the magistrate judge and adopts his R&R over petitioner's objections.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or

recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Kaull's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Upon petitioner's motion, this Court first granted petitioner an extension of time to file his objections, to be filed on or before July 18, 2014. [Crim. Doc. 69]. The motion was granted by this Court on July 21, 2014 [Crim. Doc. 71]. The petitioner filed a second motion for extension of time on August 4, 2014 [Crim. Doc. 75], which was also granted by this Court, on August 6, 2014 [Crim. Doc. 77]. Thereafter, the petitioner filed a third motion on August 14, 2014, and finding good cause, this Court granted petitioner's motion for extension on August 21, 2014. [Crim. Doc. 81]. Now that the petitioner has filed objections, this Court will conduct a *de novo* review of the portions of the magistrate judge's R&R to which the petitioner objects. *See, e.g.*, *Austin v. Cuyler*, 499 F. Supp. 1116, 1116 (E.D. Pa. 1980). The remainder of the R&R will be reviewed for clear error.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The relevant factual and procedural history regarding petitioner's motion under 28 U.S.C. § 2255 are as follows. On June 3, 2011, petitioner Williams signed a plea agreement wherein he pled guilty to Count 1 of the Indictment, conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846. In the Presentence Investigation

Report, the probation officer recommended a base offense of level of 28 and a three level enhancement for creating a substantial risk of harm to human life, with a three level decrease for acceptance of responsibility.

Before the sentencing, Williams filed objections to the pre-sentence report. As for the first objection, the Government and Williams stipulated to a base offense of 26 (at least 10 but less than 40 grams of Ephedrine) for relevant conduct. Probation increased the relevant conduct to level 28 (at least 409 but less than 70 grams of Ephedrine). Williams argued that the Government gave him the benefit of the doubt by stipulating to a base offense level of 26 because some of the purchases on the West Virginia Board of Pharmacy records were (1) for legitimate purposes; and (2) Williams' father could have purchased some of the ephedrine, which would have been credited to Williams because Williams shares the same name and address as his father. [Doc. 25 at pg. 2]. With respect to the second objection, Williams challenged the three-level increase to U.S.S.G. § 2D1.1(b)(10)(C)(ii) for creating a substantial risk of harm to human life due to the manufacture of methamphetamine. Williams asserts that the pre-sentence report erred as to the location of the methamphetamine lab.

In support of the pre-sentence report, the Government filed a memorandum arguing for a three level Guideline increase under 2D1.1(b)(10)(C)(ii). The Government asserted that the increase should apply "because the offense involved the manufacture of methamphetamine and created a substantial risk of harm to human life and the environment." [Doc. 28 at pg. 1].

On November 29, 2011, Williams was sentenced to a term of imprisonment of 120

3

months with credit for time served, no fine, and three years of supervised release. [Doc. 30]. The undersigned judge adopted the pre-sentence report, except for the offense level, and adopted the offense level of 26 as stipulated for the petitioner and the Government in the plea agreement.

On December 2, 2011, Williams appealed his conviction and sentence to the Fourth Circuit Court of Appeals. [Doc. 33]. Williams argued on appeal that this Court erred in applying the enhancement on the grounds that he did not endanger anyone other than himself while manufacturing methamphetamine. Specifically, Williams argued that there was insufficient evidence to support the application of the enhancement either as to the manufacturing of methamphetamine in the trailer or at the Econo Lodge. [Doc. 43 at pg. 13]. The Fourth Circuit rejected part of Williams' argument and concluded that his actions posed a substantial risk of harm to the lives of others at the Econo Lodge. [Doc. 43 at pg. 14].

## II.     LEGAL STANDARD

### A.     Procedural Default Standard

The law is well-settled that issues previously raised and rejected on direct appeal may not be raised in a collateral attack. **Boeckenhaupt v. United States**, 537 F.2d 1182 (4th Cir. 1976). Similarly, constitutional claims that could have been raised on direct appeal, but were not properly raised, may be raised in a § 2255 motion if the petitioner shows cause that excuses his procedural default and actual prejudice resulting from the alleged error. **United States v. Maybeck**, 23 F.3d 888, 891 (4th Cir. 1994); **United States**

*v. Frady*, 456 U.S. 152, 167–68 (1982).  However, claims of ineffective assistance of counsel not raised on direct appeal do not require a showing of cause and prejudice to be properly raised in a § 2255 motion; such claims are more appropriately raised in a collateral attack.  See **United States v. Richardson**, 195 F.3d 192, 198 (4th Cir. 1999) (citing **United States v. Gastiaburo**, 16 F.3d 582, 590 (4th Cir. 1994)).

Moreover, concerning the burden of proof, a federal prisoner seeking to collaterally attack his sentence, bears the burden of proving that his "sentence or conviction was imposed in violation of the constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28. U.S.C. § 2255.  In addition, "[a] motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence."  **Sutton v. United States**, 261 F.2d 546, 547 (4th Cir. 1958).

**B.    Ineffective Assistance of Counsel Standard**

In order to determine whether a convicted defendant's claim of ineffective assistance warranted the reversal of his conviction, the defendant must satisfy a two pronged test, articulated by the Supreme Court in **Strickland v. Washington**, 466 U.S. 668 (1984): first, the defendant must show that counsel's performance was deficient; and second, the defendant must show that counsel's deficiency prejudiced the defense.  *Id.* at 687.  These two prongs are known as the "performance" and "prejudice" prongs.  **Fields v. Att'y Gen. Of Md.**, 956 F.2d 1290, 1297 (4th Cir. 1992).

In order to satisfy the "performance" prong, the defendant must show that "counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." **Strickland**, 466 U.S. at 687. Further, the defendant must overcome the strong presumption that counsel's performance "f[ell] within the wide range of professionally reasonable assistance." **Carter v. Lee**, 283 F.3d 240, 249 (4th Cir. 2002). In order to satisfy the "prejudice" prong, the defendant must show that counsel's errors affected the ultimate outcome of trial; a mistake, even if professionally unreasonable, "does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." **Strickland**, 466 U.S. at 691. If a defendant cannot show prejudice, performance need not be considered by a reviewing court. **Fields**, 956 F.2d at 1297.

## III.   Discussion

The petitioner is seeking to raise the same substantive issues that were raised on direct appeal. This Court will not decide issues that have been fully considered by the Fourth Circuit under the cloak of a collateral attack. *See* **Boeckenhaupt v. United States**, 537 F.2d 1182, 1183 (4th Cir. 1976). The petitioner asserts claims tangential to the ones that he raised on his direct appeal, without explicitly stating his objection. The petitioner argues the lack of evidence to support the application of the enhancement as to the trailer or the Econo Lodge. *See* [Doc. 43 at pg. 13; Doc. 83 at pg. 1]. First, the petitioner states that he did not reside at the trailer on January 28, 2011. [Doc. 82 at pg. 2; Doc. 83 at pg. 1]. The petitioner also states that the police "could not tell if the windows had blankets or curtains unless he walked up to the trailer." *Id.* The Fourth Circuit did review the petitioner's claim with regards to the trailer, and found that the enhancement did not apply as to that

6

claim.[1] [Doc. 43 at pg. 13]. Second, the petitioner states that the items used to manufacture methamphetamine, found in the motel room, belonged to his girlfriend. [Doc. 82 at pg. 4]. The Fourth Circuit ruled that the evidence found in the motel room was sufficient to sustain a finding that the petitioner conspired to manufacture methamphetamine at the motel. [Doc. 43 at pg. 18]. This court will not further reconsider claims that the petitioner has already argued on direct appeal. Therefore, the petitioner's Objection is **OVERRULED**.

Next, the petitioner argues several findings of fact that were not expressly raised on direct appeal. The petitioner states and attaches signed statements from neighbors that there was no strong odor of methamphetamine coming from the window of the trailer. [Doc. 83 at pg. 2]. The petitioner further asserts that the "shake and bake" method of cooking methamphetamine does not produce a strong chemical odor; thus, the investigating officer could not have smelled the odor from outside the trailer. [Doc. 82 at pg. 3]. This argument is moot because the Fourth Circuit found sufficient evidence to support the enhancement without taking into consideration the manufacturing methamphetamine at the trailer. Thus, this Court finds this objection to be moot and the objection is **OVERRULED**.

The petitioner's next objection is that when he read the plea agreement, "he may have not fully understood what was being read to him" because he has a medical condition that required him to take medication. [Doc. 83 at pg. 2]. This issue was also not raised on

---

[1] "We agree with Appellant Williams that the district court erred in finding that the enhancement applies simply because Appellant Williams endangered his own life." [Doc. 43 at pg. 13].

7

appeal, however, the court will briefly address it. As set forth below, the petitioner's objection outright contradicts the petitioner's statements made at the plea hearing. The petitioner clearly states that he was not under the influence of any medicine at the time the plea was taken.

> THE COURT: Are you now, or in the last 24 hours, have you been under the influence of any kind of a medicine, whether it's prescribed for you, for someone else, or a nonprescription over-the-counter medicine?
> THE DEFENDANT: Just the medication they have me on at the jail there.
> THE COURT: Which is?
> THE DEFENDANT: Ibuprofen and Restor -- I think it's called Restor -- Restordon (phonetic) or Restoril or something like that.
> THE COURT: How about Restoril?
> THE DEFENDANT: Yeah, that's it.
> THE COURT: A muscle relaxant?
> THE DEFENDANT: It -- they give it to me to help me sleep at night.
> THE COURT: Okay. When did you last take Restoril?
> THE DEFENDANT: I take one every evening.
> THE COURT: And it makes you sleepy?
> THE WITNESS: After a couple hours, it does.
> THE COURT: And are you sleepy now?
> THE DEFENDANT: No, sir, I'm not.
> THE COURT: You're wide wake?
> THE DEFENDANT: Yes, I am.
> THE COURT: So the Restoril you took last night is not in any way affecting your ability to hear, understand the questions, respond to the questions, make decisions about your case or talk with your lawyer?

THE DEFENDANT: No kind of hindrance whatsoever.

THE COURT: Have you had alcohol in the last 24 hours in any form?

THE DEFENDANT: No, I have not.

THE COURT: Other than the Restoril, have you had any ibuprofen? Have you had anything?

THE DEFENDANT: This morning, I had some ibuprofen there.

THE COURT: Other than the ibuprofen, anything else?

THE DEFENDANT: They got me on Wellbutrin, too. That's in the mornings.

THE COURT: And is that affecting you in any way as you sit here today?

THE DEFENDANT: Not whatsoever.

THE COURT: The condition that you take Wellbutrin for, or the condition that you take Restoril -- Restoril for, or ibuprofen for, are any of those conditions affecting you and your ability to communicate with your lawyer, to understand questions the Court's asking you, or to make decisions?

THE DEFENDANT: No, it is not.

THE COURT: And they're not, in combination, in any way affecting you at this time?

THE DEFENDANT: Not whatsoever.

THE COURT: Is there any reason that you feel like you cannot think, understand, speak with the Court or your lawyer as a result of anything you've taken or any condition that you have?

THE DEFENDANT: No.

THE COURT: Have you received a copy of the indictment?

THE DEFENDANT: Yes, I have.

THE COURT: Did you read the indictment yourself?

THE DEFENDANT: Yes, I have.

> THE COURT: Did you particularly read Count One of that indictment, the conspiracy to manufacture methamphetamine count?
> THE DEFENDANT: Yes.
> THE COURT: Did you discuss that count as well as the other counts in the indictment with your attorney?
> THE DEFENDANT: Yes, I have.
> THE COURT: Do you understand that under your plea agreement, even if you do plead guilty to Count One of the indictment today, the remaining counts against you in that indictment will stay in force and effect until the Court has an opportunity to rule at your sentencing hearing on any motion that the Government may make under the deal to dismiss those counts?
> THE DEFENDANT: Yes, I understand.
> THE COURT: Do you understand the charge that is contained in the indictment, Count One?
> THE DEFENDANT: Yes, I do.

[Doc. 63 at pg. 11– 14].

Based on the record, the Court finds the petitioner's claim is meritless. The record presents clear and convincing evidence that the petitioner fully understood the plea agreement. Therefore, the petitioner's objection is **OVERRULED**.

Next, the petitioner objects on the basis that he requested a new attorney. [Doc. 83 at pg. 2 citing to Doc. 39 at pg. 1]. Without addressing any of the reasons stated in the R&R, the petitioner fails to adequately explain how dismissing his counsel amounts to ineffective assistance of counsel. This Court construes *pro se* claims liberally; however, this Court finds the objection unpersuasive because the petitioner does not make any arguments as why his attorney was ineffective. See **United States v. Gholson**, 33 F.

App'x 80, 81 (4th Cir. 2002). This Court agrees with the reasons fully stated in the R&R that the petitioner failed to satisfy the standard outlined in **Strickland**. The petitioner failed to show how his counsel's performance fell below an objective standard of reasonableness which resulted in actual prejudice. Thus, the objection is **OVERRULED**.

The petitioner further asserts that he did not receive a copy of discovery until after he signed the plea agreement. [Doc. 82 at pg. 4]. The petitioner's objection is simply inaccurate based on the record of the plea hearing before Judge Kaull on June 3, 2011.

> THE COURT: Did you and Mr. Kornbrath discuss the elements that the Government must be able to prove in order for you to be found guilty or -- either on plea or at a trial?
> THE DEFENDANT: Yes, we have.
> THE COURT: So you understand from that discussion that what the Government must be able to prove is that this crime occurred within the jurisdiction of the Court, that would be Randolph County, within the Northern District of West Virginia; that it was you who committed the crime; third, that what you did was knowingly and willfully combine, conspire, confederate and agree and have a tacit understanding with other persons; and fourth, to commit an offense against the United States. And that offense was to violate Title 21, United States Code, Section 841 and 841(b)(1)(C). In other words, to manufacture methamphetamine, a controlled substance?
> THE DEFENDANT: Yes.
> THE COURT: Did you and Mr. Kornbrath discuss the evidence that the Government says it has and would use to prove you guilty of each of the elements of that offense?
> THE DEFENDANT: Yes, we have.
> THE COURT: Did you and Mr. Kornbrath review that evidence?
> THE DEFENDANT: Yes, we have.

11

> THE COURT: And, Mr. Williams, after you reviewed the evidence that the Government says it has and would use, did you come to a determination in your mind, independent of what Mr. Kornbrath may have already suggested to you, that the Government could prove its case?
> THE DEFENDANT: Yes.

[Doc. 63 at pg. 14–15].

In light of the above, this Court finds that the petitioner did review the evidence that was being presented against him with his attorney . Thus, this Objection is **OVERRULED**.

## IV. CONCLUSION

Upon careful review, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Crim. Doc. 67, Civ. Doc. 8]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. As such, the petitioner's Objections **[Crim. Doc. 82, 83, 85]** are **OVERRULED**.

Accordingly this Court hereby **DENIES** and **DISMISSES WITH PREJUDICE** the petitioner's § 2255 petition **[Crim. Doc. 46, Civ. Doc. 1]** and this matter is **ORDERED STRICKEN** from the active docket of this Court. As such, this Court **DIRECTS** the Clerk to enter judgment in favor of the respondent.

As a final matter, upon an independent review of the record, this Court hereby **DENIES** the petitioner a certificate of appealability, finding that he has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and

to mail a copy to the *pro se* petitioner.

DATED: October 23, 2014.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE